**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-17-00974-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Mario Lamberto Elenes, | |
| Defendant. | |

Defendant is charged with being a felon in possession of ammunition. He has filed a motion to suppress evidence seized during a *Terry* stop. Doc. 26; *see Terry v. Ohio*, 392 U.S. 1 (1968). The motion is fully briefed, and the Court held an evidentiary hearing on December 19, 2017. For reasons set forth below and stated on the record at the close of the hearing, the Court will deny the motion.

**A. Testimony of Officer Sakalas.**

Phoenix police officer Kevin Sakalas testified at the evidentiary hearing. He has been a member of the Phoenix police department for 14 years and has been assigned to a neighborhood enforcement team in central Phoenix since 2010. On February 24, 2017, Officer Sakalas was conducting plain-clothes surveillance at a motel in his squad's assigned area. The motel is near a freeway in southern Phoenix and has a high rate of crime. While seated in an unmarked pickup truck in the parking lot of the motel, Officer Sakalas saw a vehicle drive into the parking lot and stop. Defendant Mario Elenes exited the passenger side of the vehicle and walked to the door of a motel room located about 20

| | |
|---|---|
| 1 | to 35 feet away from the officer's location. Defendant knocked on the door and a woman |
| 2 | answered. Officer Sakalas testified that Defendant and the woman appeared to engage in |
| 3 | a verbal altercation. |
| 4 | Several minutes into the altercation, two men walked by the door of the room and, |
| 5 | a short distance beyond where Defendant was standing, turned and appeared to engage in |
| 6 | a verbal confrontation with Defendant. Defendant raised an object that Officer Sakalas |
| 7 | believed to be a small rifle or a long handgun and pointed it at the men. It was shaped |
| 8 | like a firearm and had a flashlight attached to the top. When Defendant raised the object, |
| 9 | the men raised their hands, backed away, and left the vicinity. A few minutes later, the |
| 10 | woman in the room slammed the door, Defendant returned to the vehicle in which he had |
| 11 | arrived, and the vehicle left the premises. |
| 12 | The parties now agree that the object Defendant was holding at the motel was not |
| 13 | a firearm. It was a thick, carved, wooden stick, approximately 20 inches long, with one |
| 14 | end curved like the handle of a firearm. It had a flashlight taped to the end opposite from |
| 15 | the handle, similar to flashlights Officer Sakalas has seen mounted on firearms. Officer |
| 16 | Sakalas thought the object was a firearm and believed a crime had been committed. |
| 17 | Pointing a weapon at another in a threatening manner is aggravated assault under A.R.S. |
| 18 | §§ 13-1203(a)(2) and 13-1204(a)(2). |
| 19 | Officer Sakalas radioed other members of his squad and asked that a marked |
| 20 | police vehicle conduct a traffic stop on Defendant's car. Officer Sakalas followed |
| 21 | Defendant's vehicle and saw it make an excessively wide turn from Mohave Street onto |
| 22 | North 7th Street. Such a turn is a traffic violation under A.R.S. § 28-751(2). A short |
| 23 | distance later, the marked patrol car pulled over the vehicle in which Defendant was |
| 24 | riding. |
| 25 | Officer Sakalas and a few other officers from his squad approached the driver's |
| 26 | side of the vehicle. The officer asked Defendant for identification, but he was unable to |
| 27 | produce it. Officer Sakalas testified that Defendant "appeared to be agitated, upset. [It] |
| 28 | [d]id not appear that he wanted to answer questions while I was speaking with him." *See* |

Court's Livenote Transcript at 17. Officer Sakalas further testified that Defendant "was loud and had an attitude where he didn't want to fully answer questions with me. It seemed like he was visibly upset." *Id.* Defendant eventually provided his name and date of birth.

Officer Sakalas asked Defendant to exit the vehicle, and he complied. Believing Defendant was still armed and dangerous, Officer Sakalas conducted a pat-down. Defendant was wearing a leather pouch or bag on his belt. The officer testified: "Upon patting down the pouch I could tell that there was an object or objects inside and upon moving the bag, it made a sound consistent with what I believed to be loose ammunition or bullets inside of the bag." *Id.* at 21-22. Officer Sakalas asked Defendant what was in the bag, and Defendant said it contained ammunition. The officer then asked Defendant if he was a convicted felon, and Defendant said yes and that his rights had not been restored. On this basis, Defendant was arrested for being a felon in possession of ammunition.

The defense called Defendant's cousin, Rita Zamudio, to testify at the hearing. She testified that she was the woman in the motel room and that she did not have a verbal altercation with Defendant. She confirmed that he was holding the wooden object with the flashlight attached, but testified that he never pointed it at the two men who passed her room. The Court found Ms. Zamudio to be less credible than Officer Sakalas. In addition to her general demeanor, Ms. Zamudio testified that she was engaged in a normal conversation with Defendant at the motel room door, and yet also stated that the two men who passed her room stopped to ask if she was alright, a question not likely to have been asked if she was simply engaged in a normal conversation. Defendant's mother also testified at the hearing and stated that she saw the two men and they appeared to be agitated.

**B.     Rulings at the Hearing.**

At the close of the evidentiary hearing, the Court made several rulings on the record. Those rulings will be summarized briefly here.

First, the Court ruled that the stop of Defendant's vehicle was proper. The Court found that the officers had reasonable suspicion, supported by articulable facts, to believe that a crime had occurred. *United States v. Basher*, 629 F.3d 1161, 1165 (9th Cir. 2011). Based on the totality of the circumstances, the Court found that Officer Sakalas had a reasonable suspicion that Defendant had committed aggravated assault under A.R.S. §§ 13-1203(a)(2) and 13-1204(a)(2) when he pointed a firearm at the two men.

The Court found that the officers had a second valid basis for stopping the vehicle – the traffic violation. *See Whren v. United States*, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred"). The vehicle's wide turn onto 7th Street constituted a traffic violation under A.R.S. § 28-751(2), and the Court was not persuaded by Defendant's evidence that turning into the nearest lane on 7th Street was not practicable within the meaning of the statute.

Second, the Court found that if the pat-down was warranted, it stayed within permissible bounds. Defendant's motion admits that the leather bag "is such that a reasonable person 'patting' the bag would not be able to discern the contents of the leather bag without squeezing, twisting, or other manipulation of the leather bag[.]" Doc. 26 at 10. Officer Sakalas testified that he could tell the bag contained an object or objects when he patted it, that he shook the bag, and that the resulting sound suggested that it contained bullets.

The Court found that patting and shaking of the bag did not exceed the proper scope of a pat-down conducted for officer safety. The bag was large enough for a weapon (it ultimately was found to contain 36 bullets) and the officer was permitted to determine whether it in fact contained a weapon. When that fact could not be determined by patting the bag, as Defendant's motion admits, the Court finds that shaking the bag was permissible to determine whether it contained a single large object such as a gun or a knife. Briefly shaking the bag is akin to pressing the bag's content between a thumb and forefinger as the Ninth Circuit has permitted in other cases. *See United States v.*

*Mattarolo*, 209 F.3d 1153, 1158 (9th Cir. 2000). Once the officer heard a sound like bullets, he did not proceed further. He did not open the bag or manipulate it further with his fingers, and thus did not engage in actions like those found impermissible in *United States v. Miles*, 247 F.3d 1109, 1014-15 (9th Cir. 2001).

Third, the Court found that the officer's questions of Defendant – what was in the bag and whether Defendant was a convicted felon – were not improper. Questions at a *Terry* stop may go beyond the purpose of the stop if they do not have the effect of prolonging the stop. *See Arizona v. Johnson*, 555 U.S. 323, 333 (2009); *Basher*, 629 F.3d at 1166 n.3; *United States v. Mendez*, 476 F.3d 1077, 1080 (9th Cir. 2007). The two brief questions asked of Defendant did not prolong the *Terry* stop.

The Court further concluded that the officers were not required to give Defendant a *Miranda* warning before asking these two questions. For reasons stated on the record, the Court found that Defendant was not in custody when the questions were asked. *See Basher*, 629 F.3d at 1166.

**C.    Remaining Issue.**

One issue remains: Whether Officer Sakalas had a valid basis for conducting a pat-down of Defendant during the *Terry* stop. An individual detained during a *Terry* stop "may be patted down for weapons if the officer reasonably concludes that the [individual] might be armed and presently dangerous." *Johnson*, 555 U.S. at 331 (quotation marks and citation omitted). The Court concludes that Officer Sakalas had a reasonable basis for believing Defendant might be armed and dangerous. The officer had seen Defendant at a location known for its high rate of crime. The officer saw him engage in a verbal altercation with a woman in the motel room, eventually leading to her slamming the door. The officer also saw him engage in a verbal altercation with two men walking by the motel room, and saw him raise an apparent firearm and point it at the two men, causing them to raise their hands and back away. When Officer Sakalas made contact with Defendant following the vehicle stop, Defendant was not cooperative in providing

1 identification or his name and appeared agitated. Given these circumstances, there is
2 little doubt Officer Sakalas had ample reason to conduct a pat-down for officer safety.

3 Defendant notes, however, that when Officer Sakalas approached the vehicle after
4 the traffic stop he saw the wooden object lying on the floor behind the passenger's seat.
5 Although Officer Sakalas initially testified that he did not conclude at that point that the
6 object was not a firearm, on cross-examination Officer Sakalas testified that he
7 recognized that the object was made of wood when he saw it on the back floor of the car.
8 At that point, Defendant argues, any reasonable basis for believing Defendant might be
9 armed and dangerous evaporated, and a pat-down was improper.

10 The Court disagrees. Officer Sakalas, a seasoned police officer, had just seen
11 Defendant engage in verbal altercations and threatening behavior, with a simulated
12 firearm, at a high-crime location. Defendant was now acting agitated and loud, with an
13 uncooperative attitude. Given the circumstances, the Court concludes that the officer had
14 a reasonable basis to believe that Defendant "might be armed and presently dangerous."
15 *Johnson*, 555 U.S. at 331. The fact that the simulated weapon was made of wood did not
16 mean that Defendant did not have another weapon such as a knife or handgun on his
17 person. And as the Ninth Circuit has noted, even a small knife can present a safety threat
18 during a *Terry* stop. *Mattarolo*, 209 F.3d at 1158 ("The possibility of a surprise attack at
19 close quarters with even a small knife presents danger sufficient to justify an officer in
20 taking reasonable protective measures"). The Supreme Court has noted that traffic stops
21 are "especially fraught with danger to police officers." *Johnson*, 555 U.S. at 330. The
22 risk of harm is minimized, the Supreme Court has stressed, "if the officers routinely
23 exercise unquestioned command of a situation." *Id*. (quotation marks and citation
24 omitted). Given the totality of the circumstances, the Court concludes that Officer
25 Sakalas had a reasonable basis for conducting a pat-down during the stop.

26 Defendant argues that Officer Sakalas and his colleagues were not really worried
27 about weapons. Defense counsel emphasizes that they did not conduct a felony stop of
28 the vehicle, did not approach Defendant with weapons drawn, and did not require him to

place his hands outside the vehicle window before he exited. All of these facts, Defendant contends, show that the officers' real concern was not about weapons – they had some other undisclosed motive. But this argument conflicts with the Supreme Court's instruction that the reasonableness of *Terry* stops must be based on objective facts, not subjective intent. *See Terry*, 392 U.S. at 21 ("it is imperative that the facts be judged against an objective standard[.]");*Whren*, 517 U.S. at 812-14 ("The Fourth Amendment's concern 'with reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent.").

**IT IS ORDERED** that Defendant's motion to suppress (Doc. 26) is **denied**. Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to run from 11/25/2017.

Dated this 20th day of December, 2017.

_____
David G. Campbell
United States District Judge